*72 Robin F. Wynne, Justice, concurring.
I do not agree with the majority's conclusion that the relevant portions of the Fair Sentencing of Minors Act of 2017 (FSMA) are not applicable to Derrick Harris. But because I believe that it would be fundamentally unfair to deny him the relief on resentencing already afforded by this court to similarly-situated individuals, I concur in the disposition of the case.
The capital-murder statute in effect when Harris committed the offense for which he was convicted provided that a person found to have violated the statute would be sentenced to either death or life imprisonment without parole. Ark. Code Ann. § 5-10-101(c) (Supp. 1995). The FSMA amended section 5-10-101(c) to state that the sentence for a person who commits capital murder while under the age of eighteen is "life imprisonment with the possibility of parole after serving a minimum of thirty (30) years' imprisonment." The majority concludes that because this portion of the FSMA was not made retroactive, the FSMA does not apply to Harris. What the majority fails to understand is that it was not necessary for the amendment to section 5-10-101 to be made retroactive due to the operation of other provisions of the FSMA.
The FSMA also amended Arkansas Code Annotated section 16-93-621 to state:
A minor who was convicted and sentenced to the department for an offense committed before he or she was eighteen (18) years of age, in which the death of another person occurred, and that was committed before, on, or after March 20, 2017, is eligible for release on parole no later than after twenty-five (25) years of incarceration if he or she was convicted of murder in the first degree, § 5-10-102, or no later than after thirty (30) years of incarceration if he or she was convicted of capital murder, § 5-10-101, including any applicable sentencing enhancements, unless by law the minor is eligible for earlier parole eligibility.
Ark. Code Ann. § 16-93-621(a)(2)(A) (Supp. 2017). Section 16-93-621(a)(2)(B) states that subdivision (a)(2)(A) applies retroactively to a minor whose offense was committed before he or she was eighteen years of age, including minors serving sentences of life, regardless of the original sentences that were imposed.
The parole-eligibility provisions of the FSMA are clearly and expressly meant to apply retroactively. The majority concludes that "the parole eligibility provision did not apply to Harris at the time of his May 8, 2017 hearing" because after his original sentence was vacated, "Harris was no longer serving a sentence to which parole-eligibility could attach." The parole-eligibility provision applies to any sentence for a crime involving a death that was committed by a juvenile before , on , or after the effective date of the FSMA, and the FSMA clearly states that the provision is to be applied retroactively regardless of the original sentence imposed. The trial court resentenced Harris to life imprisonment, and regardless of when that sentence was imposed, the parole-eligibility provision applies to that sentence because the offense was committed before Harris was eighteen years of age. The fact that he was not serving a sentence of life imprisonment on the date of his resentencing hearing makes no difference whatsoever, and the majority's holding flies squarely in the face of the express language used by the legislature in the FSMA.
In 1996, Harris was sentenced to life imprisonment. Under the applicable statute in effect at that time, he was not eligible for parole. Under the FSMA, the portion of the statute stating that he is not *73 eligible for parole has been expressly, retroactively overridden to provide that he is eligible for parole after thirty years. The sentence of life imprisonment remains unchanged. As the only change involved parole eligibility, and that change expressly applies regardless of the timing of the offense or the sentence imposed under the original statute, it was not necessary for the legislature to make the revisions to section 5-10-101 in the FSMA retroactive. Under the statute as it existed in 1995, read in conjunction with section 16-93-621 as amended by the FSMA, it was permissible for the trial court to sentence Harris to life imprisonment with his parole eligibility to be determined as provided under the FSMA. This is exactly what the trial court did. The majority's conclusion that the FSMA cannot apply to Harris is incorrect. Further, as the possibility of release on parole satisfies the requirements of Miller v. Alabama , 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), his sentence violates neither the state nor the federal constitutions.
While the sentence imposed on Harris by the trial court is legally permissible, I am nevertheless compelled to agree that he should receive the same remedy that this court applied to Kuntrell Jackson. Like Harris, Jackson received a mandatory sentence of life imprisonment without parole for a capital murder committed while he was a juvenile. The Supreme Court of the United States granted certiorari from the denial of his petition for writ of habeas corpus as a companion case to Miller . On remand following that court's holding that Jackson's sentence violated the Eighth Amendment, we instructed the Mississippi County Circuit Court to hold a sentencing hearing where Jackson could present Miller evidence for consideration. Jackson v. Norris , 2013 Ark. 175, 426 S.W.3d 906. We further instructed the court that the sentencing range for Jackson was to be ten to forty years, or life. Id.
Harris sought and was granted habeas relief pursuant to Miller , as well as our decisions in Jackson and Kelley v. Gordon , 2015 Ark. 277, 465 S.W.3d 842. As the majority recounts, Harris was granted habeas relief, and his sentence was vacated in 2016, prior to passage of the FSMA. If his resentencing had been completed prior to passage of the Act, he would have been entitled to the same sentencing relief as Jackson. In Gordon , we held that the holding in Miller would be applied retroactively in Arkansas. We did so on the basis that fundamental fairness required that prisoners similarly situated to Jackson receive the same relief to which he was entitled as a successful petitioner to the Supreme Court of the United States. Under Gordon , Harris was entitled to the same habeas relief as Jackson, and he would have been subject to the same punishment range on resentencing but for the timing in the trial court. For the reasons of fundamental fairness and evenhanded justice that drove our decision in Gordon , I believe Harris should receive the same remedy that was applied in Jackson .
For these reasons, I concur.