JOHN DAN KEMP, Chief Justice
Appellant Derrick Lynell Harris appeals from the Drew County Circuit Court's order denying him a resentencing hearing and imposing a sentence of life with parole eligibility pursuant to the Fair Sentencing of Minors Act of 2017 (FSMA).[1] We reverse and remand.
In 1996, Harris was found guilty by a Drew County jury of capital murder. The capital-murder statute in effect at the time of Harris's offense provided for a sentence of either death or life imprisonment without parole. See Ark. Code Ann. § 5-10-101(c) (Supp. 1995).[2] Because Harris was fifteen years old[3] when he committed the crime, he was ineligible for the death penalty. See Thompson v. Oklahoma , 487 U.S. 815, 838, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988) (plurality opinion) (holding that the Eighth and Fourteenth Amendments to the United States Constitution prohibit the execution of a person who was under sixteen years of age at the time of his or her offense). Thus, he was sentenced to a mandatory term of life imprisonment without the possibility of parole. See Harris v. State , 331 Ark. 353, 961 S.W.2d 737 (1998) (affirming conviction and sentence).
In 2012, the Supreme Court of the United States held that the Eighth Amendment prohibits a sentencing scheme that requires life in prison without the possibility of parole for juvenile offenders. Miller v. Alabama , 567 U.S. 460, 479, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). Harris petitioned for writ of habeas corpus under Miller , and the Jefferson County Circuit Court issued the writ in 2016. The circuit court vacated Harris's mandatory sentence of life without parole and remanded for *66 resentencing. On remand, and pursuant to the FSMA, the Drew County Circuit Court summarily resentenced Harris to life imprisonment with the possibility of parole after thirty years.
Harris contends that the FSMA does not apply to him, and therefore, he is entitled to resentencing pursuant to this court's decisions in Jackson v. Norris , 2013 Ark. 175, 426 S.W.3d 906, and Kelley v. Gordon , 2015 Ark. 277, 465 S.W.3d 842. Further, he raises numerous constitutional challenges to the FSMA. We begin with a discussion of pertinent case law and legislative enactments.
I. Juvenile Sentencing
A. Case Law
On June 25, 2012, the Supreme Court handed down its decision in Miller v. Alabama and a companion case from Arkansas, Jackson v. Hobbs . Each case involved a fourteen-year-old offender convicted of murder and sentenced to mandatory life in prison without parole. Relying on its line of precedent holding that certain punishments are disproportionate when applied to juveniles,[4] the Court held that mandatory life without parole for juvenile offenders violates the Eighth Amendment's prohibition on "cruel and unusual punishments." Miller , 567 U.S. at 465, 132 S.Ct. 2455. The Court explained that
[m]andatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features-among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him-and from which he cannot usually extricate himself-no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth-for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.
Id. at 477-78, 132 S.Ct. 2455 (internal citations omitted). Accordingly, the Court held that defendants who committed homicide crimes as juveniles and faced a sentence of life without parole were entitled to a sentencing hearing that would permit the judge or jury to consider the individual characteristics of the defendant and the individual circumstances of the crime as mitigating factors for a lesser sentence. Id. at 489, 132 S.Ct. 2455. Because the mandatory life-without-parole sentencing schemes in Alabama and Arkansas violated the Eighth Amendment's ban on cruel and unusual punishment, the Court reversed the judgments of this court and the Alabama Court of Criminal Appeals and remanded *67 the cases for further proceedings. Id.
On remand in Jackson v. Norris ,[5] we rejected the State's argument that the Eighth Amendment violation could be cured by severing the capital-murder statute, Arkansas Code Annotated section 5-10-101(c) (Repl. 1997), to provide for a sentence of life with parole. 2013 Ark. 175, 426 S.W.3d 906. We explained that the imposition of that sentence would not allow for consideration of Miller evidence. Id. , 426 S.W.3d 906. Instead, we severed language from the statute "so that, for juveniles convicted of capital murder, all that remain[ed] [was] that capital murder is a Class Y felony." Id. , at 7-8, 426 S.W.3d at 910. We remanded the case for a sentencing hearing at which Jackson could present Miller evidence for consideration and instructed that Jackson's sentence must fall within the discretionary sentencing range for a Class Y felony, which is ten to forty years or life. Id. at 9, 426 S.W.3d at 911 (citing Ark. Code Ann. § 5-4-401(a)(1) (Repl. 1997) ); see also Whiteside v. State , 2013 Ark. 176, 426 S.W.3d 917 (reversing juvenile offender's capital-murder sentence and remanding to the circuit court for resentencing within the discretionary statutory-sentencing range for a Class Y felony and directing that a sentencing hearing be held for presentation and consideration of Miller evidence).
After Jackson obtained relief, other " Miller defendants" sought resentencing. The State took the position that Miller did not apply retroactively to cases on collateral review. We disagreed, and in Kelley v. Gordon , 2015 Ark. 277, 465 S.W.3d 842, cert. denied , --- U.S. ----, 136 S.Ct. 1378, 194 L.Ed.2d 361 (2016), we held that, as a matter of "fundamental fairness and evenhanded justice," Miller applied to all juvenile offenders convicted of capital murder. Id. at 7, 465 S.W.3d at 846. In doing so, we stated that Gordon was entitled to the same relief from his unconstitutional sentence as Jackson received-namely, a sentencing proceeding at which he will have the opportunity to present Miller evidence. Id. , 465 S.W.3d at 846. Consequently, we affirmed the circuit court's order vacating Gordon's life-without-parole sentence and reinvesting the sentencing court with jurisdiction to hold a new sentencing hearing under Miller . Id. , 465 S.W.3d at 846.
After this court decided Gordon , the Supreme Court resolved a split of authority and held that Miller's prohibition on mandatory life without parole for juvenile offenders is retroactive to cases on collateral review. Montgomery v. Louisiana , --- U.S. ----, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016). The Court noted that giving Miller retroactive effect "does not require States to relitigate sentences ... in every case where a juvenile offender received mandatory life without parole." Id. at 736. Rather, the Court indicated that states could "remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." Id.
B. Acts of the Arkansas General Assembly
Since the Supreme Court handed down its decision in Miller , the Arkansas General Assembly has twice revised the punishment authorized for juveniles convicted of capital murder. In 2013, the legislature passed Act 1490, which provided for two alternative sentences for a juvenile convicted of that offense: life imprisonment without parole or life with the possibility of parole after serving a minimum of twenty-eight years' imprisonment. See Act of Apr. 22, 2013, No. 1490, §§ 2-3, 2013 Ark. Acts *68 6587, 6588-89. Act 1490 did not apply retroactively. Id. § 1, 2013 Ark. Acts at 6588.[6]
Following the Supreme Court's Montgomery decision, the legislature passed the FSMA to "eliminate life without parole as a sentencing option for minors and to create more age-appropriate sentencing standards in compliance with the United States Constitution for minors who commit serious crimes." See Act of Mar. 20, 2017, No. 539, § 2(c), 2017 Ark. Acts 2615, 2617. The FSMA authorizes only one punishment for juvenile offenders convicted of capital murder: life with the possibility of parole after serving a minimum of thirty years' imprisonment. See FSMA § 3 (codified at Ark. Code Ann. § 5-4-104(b) (Supp. 2017) ), and § 6 (codified at Ark. Code Ann. § 5-10-101(c) (Supp. 2017) ). In addition, the parole-eligibility provision of the FSMA states that it "applies retroactively to a minor whose [first-degree murder or capital-murder] offense was committed before he or she was eighteen (18) years of age, including minors serving sentences of life, regardless of the original sentences that were imposed." FSMA § 13 (codified at Ark. Code Ann. § 16-93-621(a)(2)(B) (Supp. 2017) ). The Act provides that all juvenile offenders sentenced to imprisonment are entitled to a parole-eligibility hearing at which the parole board shall take into consideration, among other things, Miller evidence and evidence of rehabilitation. Id. (codified at Ark. Code Ann. § 16-93-621(b) (Supp. 2017) ). The emergency clause of the FSMA states that "more than one hundred persons in Arkansas are entitled to relief" under the Miller and Montgomery decisions and that the Act is "immediately necessary in order to make those persons eligible for parole." FSMA § 14.
II. Proceedings in Harris's Case
Having summarized the relevant juvenile-sentencing law, we turn to the proceedings in Harris's case. As previously noted, following the issuance of a writ of habeas corpus, the Jefferson County Circuit Court vacated Harris's life-without-parole sentence and remanded the case to the Drew County Circuit Court for resentencing. The resentencing hearing was set for May 2017. On March 22, 2017, two days after the FSMA was passed, the State filed a "Motion to Discontinue Resentencing." The State argued that the FSMA "retroactively established" parole eligibility for Harris and other similarly situated minors sentenced to life imprisonment without parole for capital murder. The State further argued that, because Harris's parole eligibility would be calculated by the FSMA, the issue of resentencing was moot. Finally, the State contended that the prior order vacating Harris's original sentence should be withdrawn.
Harris filed a response to the State's motion and argued that he was entitled to a resentencing hearing under this court's precedent in Jackson and Gordon because he was similarly situated to the defendants in those cases. He contended that the retroactive parole-eligibility provision of the FSMA was inapplicable to him because his life sentence had been vacated and he currently had no sentence of imprisonment to which parole eligibility could attach. Harris further contended that the substantive *69 penalty provision of the FSMA for juvenile offenders convicted of capital murder-life imprisonment with parole eligibility after thirty years-was not retroactive and thus did not apply to him.
On May 3, 2017, the State filed a motion for determination of the sentencing range. The motion noted that Harris objected to the retroactivity of the FSMA and stated that if the Act was not retroactive, then Harris should be sentenced in accordance with this court's decision in Jackson , which provided a range of ten to forty years' imprisonment or life.
Harris then filed a motion for resentencing under Jackson and Gordon and asserted that the circuit court should grant him a resentencing hearing to present Miller evidence, then resentence him within the discretionary range of ten to forty years or life. He further asserted that applying the current punishment under the FSMA would violate Jackson and Gordon , the purpose of the FSMA, and a host of federal and state constitutional provisions.[7]
The circuit court held a hearing on May 8, 2017. The State argued that, pursuant to the FSMA, Harris should be sentenced to life with the possibility of parole after thirty years. Harris reiterated his argument that he was entitled to resentencing pursuant to this court's decision in Jackson . He maintained that the parole-eligibility provision of the FSMA was inapplicable to him because his sentence had been vacated and that the penalty provision of the FSMA was inapplicable to him because it was not retroactive. The circuit court ruled that the FSMA applied to Harris and sentenced him to a term of life with the possibility of parole after thirty years. A new sentencing order was entered, and Harris timely filed a notice of appeal.
III. Arguments and Analysis
On appeal, Harris contends that his case is controlled by the precedent set forth in Jackson and Gordon and that the FSMA does not apply to him. Further, he raises constitutional challenges to the FSMA. To resolve the issues in this case, we must construe the FSMA. The question of the correct application and interpretation of an Arkansas statute is a question of law which this court decides de novo. E.g. , Worsham v. Bassett , 2016 Ark. 146, 489 S.W.3d 162.
In arguing that the FSMA applies to Harris, the State primarily relies on a provision of the act that sets forth parole eligibility for juveniles. This provision is codified at Arkansas Code Annotated section 16-93-621, which is entitled "Parole eligibility-A person who was a minor at the time of committing an offense that was committed before, on, or after March 20, 2017." See FSMA § 13. Section 16-93-621(a)(2), which pertains to those juveniles *70 who committed capital and first-degree murder, states,
(2)(A) A minor who was convicted and sentenced to the department for an offense committed before he or she was eighteen (18) years of age, in which the death of another person occurred, and that was committed before, on, or after March 20, 2017, is eligible for release on parole no later than after twenty-five (25) years of incarceration if he or she was convicted of murder in the first degree, § 5-10-102, or no later than after thirty (30) years of incarceration if he or she was convicted of capital murder, § 5-10-101, including any applicable sentencing enhancements, unless by law the minor is eligible for earlier parole eligibility.
(B) Subdivision (a)(2)(A) of this section applies retroactively to a minor whose offense was committed before he or she was eighteen (18) years of age, including minors serving sentences of life, regardless of the original sentences that were imposed.
The State argues that the legislature clearly intended for this provision to apply retroactively to juvenile offenders who committed their crimes before the effective date of the FSMA. However, by its plain language, the provision applies only to those juvenile offenders who are serving a sentence for either capital or first-degree murder. Here, Harris's sentence was vacated in 2016. Thereafter, Harris was no longer serving a sentence to which parole eligibility could attach. Accordingly, we hold that the parole-eligibility provision of the FSMA did not apply to Harris at the time of his May 8, 2017 hearing.
Moreover, the penalty provisions of the FSMA do not apply in this case. Section 3, which concerns the authorized sentences for capital murder or treason, amended Arkansas Code Annotated section 5-4-104(b) to read that "if the defendant was younger than eighteen (18) years of age at the time he or she committed the capital murder or treason [then] he or she shall be sentenced to life imprisonment with the possibility of parole after serving a minimum of thirty (30) years' imprisonment." FSMA § 3. Section 6 of the Act, which concerns the punishment for capital murder, amended Arkansas Code Annotated section 5-10-101(c) to provide that if the defendant was younger than eighteen years of age at the time he or she committed the capital murder, the punishment is life imprisonment with the possibility of parole after serving a minimum of thirty years' imprisonment. FSMA § 6.
Since the enactment of the criminal code, this court has consistently held that sentencing shall be in accordance with the statute in effect at the time of the commission of the offense. See, e.g. , Cody v. State , 326 Ark. 85, 929 S.W.2d 159 (1996). In addition, this court has observed a strict rule of construction against retroactive operation, and we indulge in the presumption that the legislature intended statutes, or amendments thereof, enacted by it, to operate prospectively only and not retroactively. E.g. , Bean v. Office of Child Support Enf't , 340 Ark. 286, 9 S.W.3d 520 (2000). The rule of prospectivity applies unless "the intention of the legislature to make the statute retroactive is stated in express terms, or is clearly, explicitly, positively, unequivocally, unmistakably, and unambiguously shown by necessary implication or by terms which permit no other meaning to be annexed to them, and which preclude all question in regard thereto, and leave no reasonable doubt thereof." Estate of Wood v. Ark. Dep't of Human Servs. , 319 Ark. 697, 700-01, 894 S.W.2d 573, 575 (1995). Further, we have held that in the absence of an express statement that a sentencing statute will apply retroactivel *71 y, the statute will apply prospectively only. See State v. Murphy , 315 Ark. 68, 864 S.W.2d 842 (1993).
Here, we find no general retroactivity provision in the FSMA, nor is there one attached to the penalty provisions of the Act. Therefore, we conclude that the legislature did not intend for the penalty provisions to apply retroactively. See State v. Ross , 344 Ark. 364, 39 S.W.3d 789 (2001) (noting that sentencing is controlled entirely by statute and stating that only when the General Assembly expressly provides that an act should be applied retroactively will we do so).
Our conclusion is bolstered by the fact that the legislature expressly stated its intent that other sections of the FSMA apply retroactively, regardless of the date of the commission of the criminal offense. See FSMA §§ 9-13 (amending title 16, chapter 93 to provide parole eligibility to a person who was a minor at the time of committing an offense "before, on, or after the effective date of this act"). We have recognized that the express designation of one thing may be properly construed to mean the exclusion of another. E.g., Larry Hobbs Farm Equip., Inc. v. CNH Am., LLC , 375 Ark. 379, 291 S.W.3d 190 (2009). Therefore, when the legislature includes retroactivity language in some sections of an act but omits it in other sections of the same act, we may presume that the legislature acted intentionally and purposely in the disparate inclusion or exclusion. See Russello v. United States , 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) ; Bolin v. State , 2015 Ark. 149, at 5-6, 459 S.W.3d 788, 791-92 (stating that when there was no "general expression of intent that the whole act should apply retroactively," but a "specific expression of intent" that part of the act applies retroactively, the court could conclude that the only retroactive part of the law was that expressly designated in the act). Had the legislature intended for the penalty provisions in sections 3 and 6 to be retroactive, it could have included language to that effect as it did for the parole-eligibility provisions in sections 9-13. See Bolin , 2015 Ark. 149, 459 S.W.3d 788.
Finally, although the FSMA contains an emergency clause and therefore became effective on March 20, 2017, we find no language in the clause that expressly states or necessarily implies that the penalty provisions of the FSMA apply retroactively. Based on the foregoing analysis, we hold that the penalty provisions of the FSMA are not retroactive. Therefore, the revised punishment for juveniles convicted of capital murder applies only to crimes committed on or after March 20, 2017, the effective date of the FSMA.
IV. Conclusion
In sum, the relevant provisions of the FSMA are inapplicable to Harris. This leaves him in the same situation as the defendant in Jackson . Therefore, he is entitled to a hearing to present Miller evidence for consideration and sentencing within the discretionary range for a Class Y felony, which is ten to forty years or life. Having determined that the FSMA does not apply in this case, we need not address Harris's remaining arguments on appeal. See, e.g. , Solis v. State , 371 Ark. 590, 269 S.W.3d 352 (2007) (stating that if we can resolve a case without reaching constitutional arguments, it is our duty to do so).
Reversed and remanded.
Wynne, J., concurs.
Wood, J., dissents without written opinion.
Womack, J., dissents.

See Act of Mar. 20, 2017, No. 539, 2017 Ark. Acts 2615.

See also Ark. Code Ann. § 5-4-104(b) (Supp. 1995) (stating that "[a] defendant convicted of capital murder ... shall be sentenced to death or life imprisonment without parole"); Ark. Code Ann. § 5-4-615 (Repl. 1993) (stating that "[a] person convicted of a capital offense shall be punished by death by lethal injection or by life imprisonment without parole").

Harris was born on May 2, 1980. The crime occurred on February 19, 1996.

See, e.g. , Graham v. Florida , 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (holding that a sentence of life without parole violates the Eighth Amendment when imposed on juveniles in nonhomicide cases); Roper v. Simmons , 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (barring capital punishment for those under the age of eighteen at the time of their crimes). Roper and Graham established that "children are constitutionally different from adults for purposes of sentencing [b]ecause juveniles have diminished culpability and greater prospects for reform." Miller , 567 U.S. at 471, 132 S.Ct. 2455.

Jackson v. Hobbs was styled Jackson v. Norris on remand.

Act 1490 contained no emergency clause or specified effective date. The 2013 regular session of the General Assembly adjourned sine die on May 17, 2013. Op. Ark. Att'y Gen. No. 049 (2013). Therefore, Act 1490 became effective on August 16, 2013. See Reeves v. State , 374 Ark. 415, 421 n.2, 288 S.W.3d 577, 582 n.2 (2008) (stating that pursuant to amendment 7 of the Arkansas Constitution, acts of the General Assembly that do not carry an emergency clause or specified effective date become effective on the ninety-first day after adjournment of the legislative session at which they were enacted).

Specifically, Harris contended that (1) the legislature did not intend the new sentence for juvenile capital murder to apply retroactively, (2) this court has already held that Miller is not satisfied by summarily resentencing a Miller defendant to life with the possibility of parole, (3) treating a defendant differently than other Miller defendants already resentenced is "patently unfair" and denies "fundamental fairness and evenhanded justice," (4) treating a defendant differently than other Miller defendants already resentenced would violate the federal and state equality clauses, (5) the federal and state ex post facto clauses forbid cutting the punishment range from (a) ten to forty years or life to (b) life only, (6) a defendant is entitled to individualized resentencing by "judge or jury," and a parole hearing does not suffice, (7) retroactively applying the new punishment for juvenile capital murder makes the FSMA an unconstitutional bill of attainder, and (8) applying sections 3 and 6 of the FSMA retroactively makes the statute "special" legislation forbidden by the state constitution.